**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

ROGER ALLEN ROZZELLE,

    Petitioner,

    vs.                                      Case No. 3:07cv347/RV/EMT

WALTER A. McNEIL,

    Respondent.
_____/

**ORDER**

In August 2007, Roger Allen Rozzelle filed an original petition for habeas corpus. This matter now comes on for consideration of the Magistrate Judge's Report and Recommendation ("Report"), dated May 24, 2010 (doc. 32), recommending that the petition be dismissed as untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Title 28, United States Code, Section 2244(d)(1). The parties have been provided with a copy of the Report, and have been afforded an opportunity to file objections pursuant to Section 636(b)(1). The petitioner has filed an objection to the Report (doc. 34), and I have made a de novo determination thereof. I agree with the overall conclusion reached in the Report, but for different reasons.

On July 17, 1998, Rozzelle beat Greg Leier to death in a hotel room in Fort Walton Beach, Florida, after Rozzelle believed that he had twice discovered Leier in a sexually compromising position with his (Rozzelle's) longtime girlfriend --- or as he refers to her, his "common law wife." When Rozzelle discovered them together the first time (earlier that same day), he beat them both, after which he drank beer and played pool at a bar with his brother. When he returned to the hotel and discovered them together the second time, he became "crazy" and "enraged" and administered

the beating that led to Leier's death. Rozzelle was charged with, and convicted of, second degree murder, which in Florida requires a depraved mind without regard for human life.

Even though the facts of the case appear to have presented a classic "heat of passion" defense, Douglas v. State, 652 So.2d 887, 891 (Fla. 4th DCA 1995) (describing as the "classic crimes of passion" those in which the defendant killed a man he discovered with his wife), which arguably should have reduced the murder charge to manslaughter, see, e.g., Febre v. State, 30 So.2d 367, 369 (Fla. 1947) ("'The law reduces the killing of a person in the heat of passion from murder to manslaughter out of a recognition of the frailty of human nature, of the temporary suspension or overthrow of the reason or judgment of the defendant by a sudden access of passion'"); even though the defense was so obvious and manifest that the prosecutor apparently anticipated that Rozzelle was going to raise it, see Ex. B at 265 (speculating during sidebar conference that the "defense is going to be . . . that this is a heat of passion act when he beats Greg Leier to death, either from an excusable homicide standpoint or from, you know, please reduce it to manslaughter standpoint"); even though the trial judge expressly acknowledged its applicability to the case, see id. at 267 ("It appears to the court at this time that [heat of passion] is a viable issue"), and even though heat of passion evidence was introduced during trial, see, e.g., id. at 362, 365 (Rozzelle's post-arrest statement to the police that "I just caught my old lady with another guy . . . and I kicked his ass . . . I love this woman"), Rozzelle's trial counsel did not pursue the defense. Instead, the defense appears to have been that, within several minutes after Rozzelle had concededly beaten the victim using his fists, another individual, Corey Cox, entered the hotel room and administered the final and fatal blows. Defense counsel thus suggested to the jury on summation that there was reasonable doubt as to whether Rozzelle

was the person responsible for the death. He argued that "the evidence supports a guilty verdict on the charge of battery only . . . [and] you should not find him guilty of anything more severe." Presumably because this was the defense strategy, Rozzelle's attorney did not proffer or recommend an instruction on the jury's ability to acquit of murder and convict of manslaughter specifically if it found that he had acted in the heat of passion.

Rozzelle seeks habeas relief by arguing, in pertinent part, that he is "actually innocent" of second-degree murder because the altercation "was the result of heat of passion, caused by an adequate provocation which negates the depraved mind element of second-degree murder," and, consequently, the murder charge should have been reduced to manslaughter. He argues that counsel had no evidence to support the "second attacker" defense and that counsel pursued it by "ignor[ing] the obvious defense of heat of passion caused by adequate provocation, which there was an abundance of evidence to support."[1] He claims that the jury did not acquit him of murder because his attorney was constitutionally ineffective in failing to pursue the defense. Importantly, these general arguments were previously raised (and rejected) on Rozzelle's direct appeal, see Ex. C at 19-27 (appellate brief dated March 13, 2000), and in at least one of several post-conviction motions, see Ex. H. at 12-15 (motion dated June 7, 2001).

I pause here to note that Rozzelle's arguments appear to have merit. He has a strong case to make that he acted in the heat of passion and was thus innocent of second degree murder because he did not act with the requisite depraved mind, which (if the jury agreed) would have reduced the charge to manslaughter. See Disney v. State, 73 So. 598, 601 (Fla. 1916) (while acting in the heat of passion,

---

[1] Rozzelle testified during a post-conviction proceeding that "I disagreed with the whole trial strategy point of view on that thing." See Ex. H at 129.

*Case No. 3:07cv347/RV/EMT*

premeditation is impossible and the "depravity which characterizes murder in the second degree [is] absent"); Whidden v. State, 59 So. 561 (1912) (heat of passion caused by adequate provocation "may not excuse or justify a homicide, but it may be sufficient to reduce a homicide below murder"); Palmore v. State, 838 So.2d 1222, 1224 (Fla. 1st DCA 2003) ("Heat of passion negating the depraved mind element of second degree murder is a valid defense in Florida [and will] reduce second degree murder to manslaughter if accepted by the jury"); Villella v. State, 833 So.2d 192, 195 (Fla. 5th DCA 2002) ("The defense of 'heat of passion' is well established in Florida" and may be used "as a partial defense to negate the element of depravity in second degree murder"). Admittedly, this is not the typical "actual innocence" claim (such as, for example, where petitioner claims mistaken identity), but courts have held that it qualifies. See, e.g., Jones v. Delo, 56 F.3d 878, 883 (8th Cir. 1995) ("Although a prototypical example of 'actual innocence' is the case where the State has convicted the wrong person of the crime, one is also actually innocent if the State has the 'right' person but he is not guilty of the crime with which he is charged.") (multiple citations and alterations omitted); see also Britz v. Cowan, 192 F.3d 1101, 1103 (7th Cir. 1999) (rejecting as "too narrow" the view that an actual innocence claim requires that the petitioner did not actually kill the victim; explaining "[o]ne can kill yet be innocent of murder," such as where he has a valid defense to the crime as charged) (Posner, J.); In re Minarik, 166 F.3d 591, 607 (3d Cir. 1999) (proceeding under the assumption that actual innocence claim includes the situation where the evidence shows that the petitioner lacked intent and was not guilty of murder, even though he was "guilty of some lesser offense").

  Moreover, he has a strong case to make that trial counsel was ineffective in not pursuing a defense for which there appears to have been ample evidence, and instead pursuing one that was perhaps lacking in evidentiary support. The Eleventh

Circuit has found ineffective assistance where an attorney in a murder case did not raise the heat of passion defense and failed to request a manslaughter instruction. See generally Young v. Zant, 677 F.2d 792 (11th Cir. 1982) (granting habeas relief where trial counsel "neglected a very strong argument that Young killed Flynt in the heat of passion and thus was guilty, if at all, of voluntary manslaughter"). It seems to me that a reasonable jury properly advised of, and instructed on, the law of heat of passion would not have convicted him of murder. Therefore, Rozzelle might well have been entitled to habeas relief if he had presented his arguments in a timely-filed petition. It is undisputed, however, that his federal habeas petition is untimely by more than three years. See Report at 2-5. The question then becomes whether equitable tolling is appropriate. Specifically, I must decide if, pursuant to Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), Rozzelle may use his seemingly viable claim of actual innocence as a "gateway" through the statute of limitations so that he may have his seemingly viable claim of ineffective counsel heard on the merits.

 Schlup generally requires a petitioner to produce "new reliable evidence --- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence --- that was not presented at trial" and which renders it "more likely than not that no reasonable juror would have convicted him in light of the new evidence." See 513 U.S. at 324, 327. The Report concludes that Rozzelle cannot meet this standard because his "new evidence" on heat of passion (which consists of, inter alia, various statements in the police reports that he was "crazy" and "enraged" when he discovered Leier with his girlfriend) was cumulative and "substantively the same" as other heat of passion evidence that was admitted at trial. This is true enough as far as it goes; and the Report is certainly correct that, ordinarily, a claim of actual innocence must be based on new and non-cumulative

evidence. See, e.g., Goldblum v. Klem, 510 F.3d 204, 226 n.14, 233 (3d Cir. 2007) (rejecting Schlup claim where the evidence was not new and "did not carry much weight because [it] was similar to the trial testimony of another [witness]"). However, this case does not present a run-of-the-mill Schlup claim.

Typically, claims of actual innocence involve factual matters. For example, a petitioner will file an affidavit of an alibi witness or new eyewitness supporting the claim that the police got the wrong guy, or newly-discovered facts purporting to show that he could not have been guilty of the crime with which he was charged. Rozzelle's claim, by contrast, really involves a legal matter, i.e., his claim that the conviction is legally wrong insofar as the elements of second degree murder could not be established as a matter of law and would have resulted in acquittal on that charge but for his attorney failing to pursue the heat of passion defense. In this situation, it is of no real consequence that (as the Report rightly notes) heat of passion evidence was introduced during the trial. Without counsel pursuing the defense, the jury did not know what, if anything, it could actually do with that evidence --- particularly since counsel did not request or proffer a jury instruction that would have enabled the jury to acquit of murder and convict on manslaughter specifically if it found that Rozzelle acted in the heat of passion.[2] Therefore, to say that the heat of passion evidence Rozzelle highlights in his petition was cumulative

---

[2] To the extent that the respondent might be suggesting that the standard instruction on excusable homicide (which was given to the jury) was sufficient because it allowed the jury to conclude that the killing was "lawful" if it occurred "in the heat of passion upon any sudden and sufficient provocation," see doc. 21 at 20, case law holds otherwise. See Palmore v. State, 838 So.2d 1222 (Fla. 1st DCA 2003) (noting the difference between lawful homicide (which excuses the killing) and a heat of passion defense (which reduces the killing from murder to manslaughter), and holding that the standard instruction does not cover a heat of passion defense).

*Case No. 3:07cv347/RV/EMT*

and duplicative of certain other evidence at trial is true, but ultimately irrelevant in this factual context.

Rather, the pertinent question is: <u>if</u> new evidence is not required on the unique facts of this case (and I am inclined to conclude it is not), and <u>if</u> Rozzelle has made a showing of actual innocence (and I am inclined to believe he has), is there is a gateway actual innocence exception through the statute of limitations for his original petition? Although the Eleventh Circuit has intimated in dicta that there might be, <u>see</u> <u>Wyzykowski v. Dep't of Corrections</u>, 226 F.3d 1213, 1218-19 (11th Cir. 2000), it has not definitively answered this question --- despite frequent and repeated opportunities to do so --- because it has not yet confronted a valid actual innocence claim. <u>See</u>, <u>e.g.</u>, <u>Johnson v. Florida Dep't of Corrections</u>, 513 F.3d 1328, 1333 (11th Cir. 2008) (noting that, to date, this circuit has avoided the "difficult constitutional question" of whether there is an actual innocence exception for original habeas petitions because the petitioners claiming actual innocence have failed to make the requisite showing of innocence); <u>Arthur v. Allen</u>, 452 F.3d 1234, 1244 (11th Cir. 2006) (same); <u>Sibley v. Culliver</u>, 377 F.3d 1196, 1204-05 (11th Cir. 2004) (same). However, several other circuits have weighed in on this issue.

Four circuits have ruled that there is no actual innocence exception serving as a gateway through the statute of limitations in original petitions. <u>See</u> <u>Lee v. Lampert</u>, --- F.3d ---, 2010 WL 2652505 (9th Cir. July 6, 2010) (O'Scannlain, J.); <u>Escamilla v. Jungwirth</u>, 426 F.3d 868 (7th Cir. 2005) (Easterbrook, J.); <u>David v. Hall</u>, 318 F.3d 343 (1st Cir. 2003) (Boudin, J.); <u>Cousin v. Lensing</u>, 310 F.3d 843 (5th Cir. 2002) (Smith, J.). Two circuits have intimated that actual innocence may equitably toll AEDPA's statute of limitations, provided that the petitioner pursued his claim diligently. <u>See</u> <u>Flanders v. Graves</u>, 299 F.3d 974 (8th Cir. 2002) (Arnold, J.); <u>Gibson v. Klinger</u>, 232 F.3d 799 (10th Cir. 2000) (Tacha, J.). One circuit has

held that there is an actual innocence exception that can be used to equitably toll the statute of limitations even if the petitioner did not pursue his claims diligently. See Souter v. Jones, 395 F.3d 577 (6th Cir. 2005) (Moore, J.).

I agree with the clear majority and need not repeat their analysis. As applied to the facts of this case, I particularly find persuasive the First Circuit's decision in David, supra, which held that it is "not even arguably unconstitutional" to deny habeas relief to a petitioner alleging actual innocence when he knew of the basis for his innocence claim and could have brought his claim within the deadline, but he did not. That is the precise situation presented sub judice. Rozzelle knew of his actual innocence claim (based on a heat of passion defense) at or around the time of his trial in May 1999 --- and certainly no later than March 2000 when he raised the claim on his direct appeal --- yet he did not file his federal habeas petition until August 2007, more than three years too late. "In general, defendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming: pre-trial motions must be filed on time, timely appeals must be lodged, and habeas claims must conform to AEDPA . . . . A defendant who could not have filed his petition earlier is at least a sympathetic figure; one who has a known claim, defers presenting it, and then asks to be excused for the delay is unlikely to get cut much slack." David, supra, 318 F.3d at 347; accord Lee, supra, 2010 WL 2652505, at *6 (refusing to toll statute of limitations for actual innocence claim because the petitioner had "ample time to bring his claim" where the grounds for the innocence claim "were available to him immediately following his conviction"); Escamilla, supra, 426 F.3d at 872 ("Prisoners claiming to be innocent, like those contending that other events spoil the conviction, must meet the statutory requirement of timely action."); Cousin, supra, 310 F.3d at 849 (explaining "the doctrine of equitable tolling is not applied

where a petitioner has failed to pursue habeas relief diligently"); Flanders, supra, 299 F.3d at 977-78 ("To allow an assertion of actual innocence to excuse the running of the statute [where the petitioner knew or should have known of the grounds for his claim] would take the equitable-tolling doctrine far from its original and legitimate rationale"; therefore, an untimely petition alleging actual innocence must show, "at the very least, that a reasonably diligent petitioner could not have discovered these facts in time to file a petition within the period of limitations"); Gibson, supra, 232 F.3d at 808 (equitable tolling is appropriate for a prisoner who is actually innocent if he "diligently pursue[s] his federal habeas claims"); see also, e.g., Gildon v. Bowen, 384 F.3d 883, 887 (7th Cir. 2004) (explaining that claim of actual innocence will not avoid statute of limitations where "a reasonably diligent petitioner" knew or should have known of the basis for his innocence claim within AEDPA's limitations period); Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000) (refusing to toll statute of limitations on petitioner's actual innocence claim where "nothing prevented him from filing a petition before the limitations period expired"); Horning v. Lavan, 197 Fed. Appx. 90, 94 (3d Cir. 2006) ("even assuming that this court were to permit equitable tolling of the AEDPA statute of limitations when a viable claim of actual innocence has been presented, Horning's claim would nevertheless fail because he did not exercise reasonable diligence in pursuing his actual innocence claim" where he raised the same grounds in state court several years prior). Therefore, Rozzelle's arguable "actual innocence" of second degree murder based on persuasive evidence of heat of passion is insufficient to toll the applicable statute of limitations under the current state of the law.

Because the Courts of Appeal have reached different results, however, and because the Eleventh Circuit has not directly ruled on the issue, a reasonable jurist might decide the case either way. Accordingly, a certificate of appealability should

issue on the question whether there is an "actual innocence" exception that will equitably toll the AEDPA statute of limitations period, and, if so, whether that exception should be available to a petitioner who failed to pursue his innocence claim diligently.

Therefore, it is **ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation is adopted and incorporated by reference in this order.
2. The petition for writ of habeas corpus (doc. 5) is **DISMISSED** with prejudice as untimely.
3. A certificate of appealability is **GRANTED**.

**DONE AND ORDERED** this 21st day of July, 2010.

/s/ Roger Vinson
**ROGER VINSON**
**SENIOR UNITED STATES DISTRICT JUDGE**